IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:17-CV-63-D

KAREN CAHOON, as Executrix )
of the Estate of Grace H. Webster, )
)
Plaintiff, )
)
v. ) **ORDER**
)
EDWARD ORTON, JR. CERAMIC )
FOUNDATION, METROPOLITAN )
LIFE INSURANCE COMPANY, and )
UNION CARBIDE CORPORATION, )
)
Defendants. )

On December 21, 2017, Karen Cahoon ("Cahoon" or "plaintiff") filed a complaint against the Edward Orton, Jr. Ceramic Foundation (the "Foundation"), the Metropolitan Life Insurance Company ("Met Life"), and the Union Carbide Corporation ("Union;" collectively with the Foundation and Met Life, "defendants") [D.E. 1]. In her complaint, Cahoon alleges state law claims of negligence, breach of an implied warranty, failure to warn, and punitive damages against the Foundation and Union, and state law claims of conspiracy and punitive damages against Met Life. See Compl. [D.E. 1] ¶¶ 13–55. On May 1, 2019, the Foundation moved for summary judgment [D.E. 59] and filed a memorandum and documents in support [D.E. 60]. On May 10, 2019, Cahoon moved for an extension of time to file expert reports of Dr. Cohen, Dr. Staggs, and Dr. Spear [D.E. 62]. On May 21, 2019, Cahoon responded in opposition to the Foundation's motion and filed documents in support, including the expert reports of Dr. Cohen, Dr. Staggs, and Dr. Spear [D.E. 63]. On May 24, 2019, the Foundation responded in opposition to Cahoon's motion for an extension

of time to file her expert reports [D.E. 64], and on June 4, 2019, replied to Cahoon's filings regarding the Foundation's motion for summary judgment [D.E. 65]. On June 7, 2019, Cahoon replied to the Foundation's response to her motion regarding an extension of time to file her expert reports [D.E. 66]. As explained below, the court denies Cahoon's motion for an extension of time to file the expert reports of Dr. Cohen, Dr. Staggs, and Dr. Spear, strikes the expert reports of Dr. Cohen, Dr. Staggs, and Dr. Spear, and grants the Foundation's motion for summary judgment.

I.

On May 11, 2018, the court issued its first scheduling order [D.E. 37]. In that order, this court set "critical deadline[s]" requiring Cahoon to file expert reports by November 2, 2018, and the Foundation to file rebuttal expert reports by November 30, 2018. See id. at 1. The order also informed the parties that "[t]he parties will conduct discovery of this matter in accordance with the Federal Rules of Civil Procedure." Id. at 1. On October 16, 2018, the parties filed a joint motion requesting that the court extend the deadlines for filing expert reports to December 15, 2018, and filing rebuttal expert reports to January 15, 2019. See [D.E. 44] 3. The parties explained that the Foundation discovered new documents, that this discovery delayed the parties' jurisdictional discovery, and that more time was needed to adequately address the new documents and to depose the Foundation's representative on the issue. See id. at 2. The parties noted that "[r]ecognizing this issue, counsel for the Plaintiff and Defendants proactively met and conferred to discuss an amendment to the current [s]cheduling [o]rder." Id. On October 17, 2018, the court granted the parties' motion. See [D.E. 45].

On January 4, 2019, the parties again filed a joint motion to amend or correct the scheduling order. See [D.E. 46]. In support, the parties stated that the same issues identified in their first joint motion to amend the scheduling order persisted, and that the parties "are proactively conducting

settlement negotiations." Id. at 2. The parties "worked collaboratively and cooperatively" to request new deadlines of March 15, 2019, for reports from Cahoon's experts and April 15, 2019, for the Foundation's rebuttal experts. See id. at 3. Furthermore, the parties proposed that "[a]ll discovery shall be completed by April 5, 2019," and that "[a]ll potentially dispositive motions shall be filed by May 1, 2019." Id. The parties did not address that this motion was filed after the court's previous deadline of December 15, 2018, for Cahoon to file her expert reports. See generally id. On January 8, 2019, the court granted the parties' motion. See [D.E. 47].

On April 15, 2019, the Foundation filed notice of service of its expert reports. See [D.E. 56]. On May 1, 2019, the Foundation moved for summary judgment and filed a memorandum and documents in support. See [D.E. 59]. As of May 1, 2019, Cahoon had not filed notice of or served on the Foundation her expert reports. On May 10, 2019, Cahoon moved for an extension of time to disclose expert reports from Dr. Cohen, Dr. Staggs, and Dr. Spear. See [D.E. 62] 1. Dr. Staggs's expert report is dated February 2, 2019. Dr. Cohen's expert report is dated February 5, 2019. Dr. Spear's expert report is dated April 1, 2019. See id. at 2; Exs. 28, 29, 30 [D.E. 63-28, 63-29, 63-30]. In her motion, Cahoon recognized that she was aware of the deadline of March 15, 2019, for her to disclose expert reports. See [D.E. 62] 1. According to Cahoon, "[d]ue to a change in staffing and resulting clerical error, [Cahoon] did not make timely disclosure of certain expert reports." Id. Cahoon explained that her "counsel had a change in staff whose responsibility included calendaring and disclosing [the expert] reports. Unfortunately, the deadlines and disclosure were missed due to clerical error. It is evident that [Cahoon] obtained her reports in a timely manner and the delay in disclosure was unintended." Id. at 2–3. In a footnote, Cahoon acknowledged that Dr. Spear's report is dated two weeks past the March 15, 2019, deadline "due to the expert's heavy workload." Id. at 3 n.1.

3

In her reply to the Foundation's filing, Cahoon stated that a paralegal was responsible for filing the expert reports. See [D.E. 66] 1–2. However, the paralegal retired (presumably before the expert report filing deadline), and Cahoon's counsel "was under the mistaken belief that this task had been reassigned and the reports had been served in the usual course of business." Id. On May 7, 2019, when Cahoon's counsel realized that the expert reports of Dr. Cohen, Dr. Staggs, and Dr. Spear were not filed or sent to the Foundation, Cahoon's counsel emailed the expert reports to the Foundation and asked for the Foundation's position on filing a motion for relief under Local Rule 6.1. See id. at 2. On May 10, 2019, Cahoon again asked for the Foundation's position on her motion, and the Foundation replied that it objected to Cahoon's request. See id.

II.

Rule 16 of the Federal Rules of Civil Procedure provides, in relevant part, that "the district judge . . . must issue a scheduling order" after the parties file a Rule 26(f) report or after the scheduling conference. Fed. R. Civ. P. 16(b)(1). "The scheduling order must limit the time to . . . complete discovery[] and file motions." Fed. R. Civ. P. 16(b)(3)(A). Additionally, the scheduling order may "modify the timing of disclosures under Rule 26(a)," which includes disclosure of expert testimony. Fed. R. Civ. P. 16(b)(3)(B)(i); see Fed. R. Civ. P. 26(a)(2). Under Rule 26(a)(1), each party must provide "the name . . . of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses . . . ." Fed. R. Civ. P. 26(a)(1)(A)(i). Under Rule 26(a)(2)(A), "[i]n addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule[s] of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). "[T]his disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert

4

testimony . . . ." Fed. R. Civ. P. 26(a)(2)(B). This report must contain, inter alia, "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Furthermore, "[a] party must make these disclosures at the time and in the sequence the court orders." Fed. R. Civ. P. 26(a)(2)(D).

"If a party fails to [timely] provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The court has "broad discretion" to determine whether an untimely disclosure is substantially justified or harmless. Hill v. Coggins, 867 F.3d 499, 507 (4th Cir. 2017) (quotation omitted); see Wilkins v. Montgomery, 751 F.3d 214, 222 (4th Cir. 2014); S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003). In determining whether to exclude untimely expert disclosures, courts consider five factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence." S. States Rack & Fixture, 867 F.3d at 597. The court has broad discretion to select the appropriate remedy in light of the totality of the circumstances. See id. at 595; Fed. R. Civ. P. 37(c)(1). A remedy available to the court includes striking the expert reports. See S. States Rack & Fixture, 867 F.3d at 595–96; cf. Saudi v. Northrop Grumman Corp., 427 F.3d 271, 279 (4th Cir. 2005); Rabb v. Amatex Corp., 769 F.2d 996, 999–1000 (4th Cir. 1985). Furthermore, "[t]he burden of establishing [the Southern States] factors lies with the nondisclosing party." Wilkins, 751 F.3d at 222.

As for the first factor, Cahoon argues that the reports of Dr. Cohen, Dr. Staggs, and Dr. Spear did not surprise the Foundation. See [D.E. 62] 4. In support, Cahoon asserts that in her initial

5

disclosure she listed the three experts that she ultimately disclosed, and that the Foundation was aware that the three experts had testified in other cases involving the Foundation. See id.

Although Cahoon identified each expert in her initial disclosure, Cahoon also identified ten other potential expert witnesses and "reserve[d] the right to supplement [the list of experts] as" discovery proceeded. See [D.E. 62-2] 3–4. Thus, Cahoon's initial disclosures did not negate the surprise of the actual expert reports of Dr. Cohen, Dr. Staggs, and Dr. Spear. Moreover, even if the Foundation was involved in similar cases that involved these three experts, the Foundation did not, and could not, prepare for the testimony of Dr. Cohen, Dr. Staggs, and Dr. Spear concerning this case and this plaintiff until Cahoon filed the expert reports. Furthermore, the Foundation timely filed its summary judgment motion in compliance with the court's scheduling order believing that Cahoon did not have any expert testimony in this case.

As for the second factor, Cahoon argues that she does not object to the Foundation supplementing its expert reports based on the reports of Dr. Cohen, Dr. Staggs, and Dr. Spear. See [D.E. 62] 2. Such supplementation, however, does not cure the surprise of Cahoon's late filing of her expert reports. As discussed, the Foundation did not have the benefit of Cahoon's expert reports when preparing and filing its summary judgment motion. Thus, if the court were to accept Cahoon's supplemental proposal, this court would have to permit more discovery and another round of summary judgment briefing. The court, however, has over 700 pending cases, and the deadlines in its scheduling orders are not suggestions. Cahoon's proposed solution does not cure the surprise.

As for the third factor, Cahoon argues that her request would not disrupt the proceedings because the court has not set a trial date, the parties have not deposed experts, and the Foundation's motion to dismiss is pending. See [D.E. 62] 2. On the contrary, allowing Cahoon to file her expert reports would prejudice the both the court and the Foundation. Although a trial date has not been

6

set and the court has recently addressed a pending jurisdictional motion, this case has been pending since December 2017. Reopening discovery and having another round of summary judgment briefing would trample the scheduling order and disrupt the proceedings in this case. Additionally, granting Cahoon's motion would signal to all litigants that the deadlines in this court's scheduling orders are mere suggestions. They are not. Given the substantial caseload of the court, such a signal would eviscerate the court's ability to manage its docket. Cf. Dietz v. Bouldin, 136 S. Ct. 1885, 1892–93 (2016) (collecting cases). Furthermore, if Cahoon were allowed to file her expert reports at this late juncture, the court would be forced to reopen discovery over eight months after it closed. Cf. Wilkins, 751 F.3d at 223; Hoyle v. Freightliner, 650 F.3d 321, 330 & n.6 (4th Cir. 2011). The Foundation then would have to depose each of Cahoon's experts and have its own experts respond to the newly disclosed expert reports. The court would then have to have another round of summary judgment briefing. The third factor does not support Cahoon.

As for the fourth factor, Cahoon asserts that the expert testimony is crucial for her claims, and that the unique nature of asbestos claims requires expert medical testimony. See [D.E. 62] 4–5. The court agrees that expert medical testimony is necessary. Nonetheless, given the importance of expert medical testimony in this asbestos case, the court would have expected much more diligence concerning expert disclosures from Cahoon.

As for the fifth factor, Cahoon argues that counsel's mistake was inadvertent and that she has taken all steps to resolve the mistake. See [D.E. 62] 5. Cahoon's excuse for the untimely filing, however, is inadequate. Cahoon was aware of the scheduling order deadlines, as evidenced by the Foundation and Cahoon's two joint motions to extend those deadlines. A mere change in staff does not justify noncompliance with the court's scheduling order.

In sum, the factors in this case weigh strongly in favor of excluding Cahoon's expert reports. Accordingly, the court excludes the expert reports of Dr. Cohen, Dr. Staggs, and Dr. Spear.[1]

III.

Alternatively, the court excludes Dr. Cohen's, Dr. Staggs's, and Dr. Spear's expert reports under Rule 16. Generally, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); see Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008). "Rule 16(b)'s good cause standard emphasizes the diligence of the party seeking amendment." O'Connell v. Hyatt Hotels of P.R., 357 F.3d 152, 155 (1st Cir. 2004) (quotation omitted); see RFT Managment Co. v. Powell, 607 F. App'x 238, 242 (4th Cir. 2015) (per curiam) (unpublished); Nourison, 535 F.3d at 298. Good cause exists when a party's reasonable diligence before the expiration of the amendment deadline would not have resulted in the discovery of the evidence supporting a proposed amendment. See United States v. Godwin, 247 F.R.D. 503, 506 (E.D.N.C. 2007). The burden to demonstrate good cause is on the moving party. See id.

Cahoon does not explicitly address good cause in her motion for extension of time or her reply. A change in Cahoon's counsel's staff, without more, is not good cause, and Cahoon's actions in both acquiring and filing the expert reports of Dr. Cohen, Dr. Staggs, and Dr. Spear do not demonstrate diligence. See Rabb, 769 F.2d at 1000. Because Cahoon fails to demonstrate good

---

[1] Although neither party raised the issue, see [D.E. 62, 64, 66], the court recognizes that precluding Cahoon's expert reports is "tantamount to a Fed. R. Civ. P. 37(b)(2)(C) dismissal" of Cahoon's negligence, breach of implied warranty, and punitive damages claims. Rabb, 769 F.2d at 1000. As in Rabb, however, Cahoon's counsel was aware of the scheduling order deadlines and disregarded those deadlines, both when counsel did not ensure that Dr. Staggs's and Dr. Cohen's expert reports were timely filed and when counsel did not submit Dr. Spear's report to counsel by the scheduling order deadline. See id. Counsel for Cahoon does not claim, nor can counsel claim, that they did not understand their duty to the court to comply with the scheduling order. See id.; cf. [D.E. 62, 66]. Accordingly, Rabb supports excluding the expert reports of Dr. Cohen, Dr. Staggs, and Dr. Spear.

8

cause for her untimely filing of the expert reports, Cahoon is subject to sanction under Rule 16(f).

The court "has wide latitude in imposing sanctions on parties who fail to comply with pretrial orders and procedures." World Wide Demil, LLC v. Nammo, 51 F. App'x 403, 407 n.4 (4th Cir. 2002) (per curiam) (unpublished); see Thompson v. United States, No. 7:14-cv-00092, 2015 WL 2412249, at *4 (May 21, 2015 W.D. Va.) (unpublished); Akeva L.L.C. v. Mizuno Corp., 212 F.R.D. 306, 309 (M.D.N.C. 2002). If a party "fails to obey a scheduling . . . order," the court "[o]n motion or on its own . . . may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii)." Fed. R. Civ. P. 16(f). Rule 37(b)(2)(A) provides, in relevant part, that the court "may issue further just orders," including:

> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Id. 37(b)(2)(A)(ii)–(vii). When deciding which sanction to impose, the court considers: "(1) the reason for failing to name the witness [or failing to complete expert reports]; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." Rambus, Inc. v. Infineon Techs. AG, 145 F. Supp. 2d 721, 736 (E.D. Va. 2001); see Thompson, 2015 WL 2412249, at *4.[2]

---

[2] One district court in the Fourth Circuit has applied the Southern States factors when analyzing Rule 16(f). See Factory Mutual Ins. Co. v. DLR Contracting, Inc., No. 3:04CV834, 2005

9

As for the factors concerning sanctions under Rule 16(f), Cahoon is prohibited from introducing the expert reports of Dr. Cohen, Dr. Staggs, and Dr. Spear for the same reasons discussed under Rule 37(c). Those reasons apply with equal force in applying Rule 16(f). If the court were to allow Cahoon to introduce the expert reports of Dr. Cohen, Dr. Staggs, and Dr. Spear, the court would have to reopen discovery and abandon the entire schedule in an already much-delayed case. Allowing Cahoon's reports would also signal to future litigants that the court's scheduling orders are "frivolous pieces of paper idly entered" and subject to cavalier disregard. O'Connell, 357 F.3d at 155 (quotations omitted). "In an era of burgeoning case loads," this court declines to send that signal. Id. Although the expert reports are crucial to Cahoon's case, this factor alone does not excuse otherwise inexcusable behavior. Accordingly, Cahoon the court excludes Dr. Cohen's, Dr. Staggs's, and Dr. Spear's expert reports in this action.

IV.

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for

---

WL 2704502, at *15 (E.D. Va. Oct. 20, 2005) (unpublished). As the Thompson court notes, the four factors above and the Southern States factors are substantially similar. See Thompson, 2015 WL 2412249, at *4 n.5. In any event, the court reaches the same conclusion under either the Southern States factors or the Rule 16(f) factors.

10

trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Scott v. Harris, 550 U.S. 372, 378 (2007).

A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. See Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of plaintiff's position [is] insufficient . . . ." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that affect the outcome under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248.

The Foundation, a charitable trust and non-profit organization, works to "maintain and improve the quality of [pyrometric] cones, to sell cones at the lowest rate," and to use sale proceeds "for research for the benefit of the 'kiln fired' ceramics industry." Ex. 1 [D.E. 60-1] 3; see Lawson Aff. [D.E. 60-2] 1, 2. Pyrometric cones, in turn, "are used to determine the combined effect of temperature and time . . . in the firing of ceramics." Ex. 1 [D.E. 60-1] 4. A user places the pyrometric cones on a specialized mounting in the kiln and observes various changes to the cone during the firing process to detect conditions relevant to ceramic firing. See id. at 6–7. The cones are made from materials similar to the materials used to make the ceramic product, none of which contain asbestos. See id. at 4, 6; Lawson Aff. [D.E. 60-2] 2.

For some time up to 1963, the Foundation packaged its pyrometric cones for sale in boxes containing sawdust. See Fronk Aff. [D.E. 63-8] 11. When the Foundation could not obtain sawdust

11

in the quantities required, it looked at "six to eight" replacement products for packaging and eventually chose vermiculite. See id. at 11–12. From March 1963 to June 1975 and September 1979 to December 1981, the Foundation purchased its vermiculite from either W.R. Grace or Zonolite. See Lawson Aff. [D.E. 60-2] 2.[3] W.R. Grace mined its vermiculite in Libby, Montana. See id. at 2. From June 1975 to September 1979 and May 1982 to March 1983, the Foundation purchased vermiculite from J.P. Austin. See id. at 2. J.P. Austin's vermiculite did not contain tremolite. See id. In 1983, the Foundation stopped using vermiculite packaging and began to use styrofoam. See Childress Dec. [D.E. 63-10] 2.

On September 2, 1981, the Foundation requested a Material Safety Data Sheet ("MSDS") from W.R. Grace for vermiculite the Foundation used as packaging for its cones. See Ex. 11 [D.E. 63-11] 1. On September 25, 1981, W.R. Grace provided a MSDS to the Foundation. See Ex. 12 [D.E. 63-12] 1–2. The MSDS notes that Libby, Montana vermiculite "[c]ontains less than 0.1% by weight of a naturally occurring contaminant tremolite. OSHA Regulation 1910.1001 defines tremolite as asbestos." Id. at 2. The MSDS also notes that "[t]he physical handling given to expanded [v]ermiculite can release both airborne fibers and nuisance dust." Id. In addition, the MSDS identifies the relevant OSHA regulations for "approved control procedures" and "[p]ersonal [p]rotective [e]quipment for dealing with work environments in excess of exposure limits." Id. at 2–3. W.R. Grace states that it first began providing the MSDS to its vermiculite customers in 1974. See Ex. 14 [D.E. 63-14] 21–22.

Grace Webster was a professional ceramics maker and teacher. See Cahoon Dep. [D.E. 63-1] 11–13, 37–39. Beginning in the 1960s, Webster taught ceramics classes at the College of the

---

[3] W.R. Grace purchased Zonolite in 1963. See [D.E. 60] 5 n.2.

12

Abermarle and at a personal ceramics studio located on her property. See id. 12–15, 18–20. Webster used pyrometric cones that the Foundation manufactured. See id. at 19–21. Cahoon, executrix of Webster's estate, testified that Webster would purchase the cones "at least monthly" from a store named Ceramics by Stu-doodle. Id. at 33–34; see [D.E. 63] 2; Garrett Dep. [D.E. 63-2] 8–9, 14. When preparing to use the cones, Cahoon testified that Webster would remove the cones from the box either by placing her hands in the vermiculite packaging to locate the cone or by emptying the box's contents onto a surface or into a bowl. See Cahoon Dep. [D.E. 63-1] 24–25. Cahoon also testified that, once the students had used all of the cones in a package, Webster would use her hand to push the remaining vermiculite packaging into the trash. See id. at 30–31. Webster swept up any vermiculite packaging that happened to fall onto the floor with a broom and dust pan. See id. Both actions of cleaning up the vermiculite packaging created some amount of visible dust. See id. at 30–32. Webster retired from her professional ceramics work in 2000. See id. at 39. In March 2016, Webster was diagnosed with mesothelioma. See id. at 11. In July 2016, Webster died. See id.

A.

As for Cahoon's negligence claims, the North Carolina Products Liability Act ("NCPLA") includes actions for death "caused by or resulting from the manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, testing, listing, certifying, warning, instructing, marketing, selling, advertising, packaging, or labeling of any product." N.C. Gen. Stat. § 99B-1(3). A plaintiff may recover under the NCPLA based on a negligence theory or a warranty theory. See Red Hill Hosiery Mill, Inc. v. MagneTek, Inc., 138 N.C. App. 70, 75, 530 S.E.2d 321, 325–26 (2000); cf. Crews v. W.A. Brown & Son, 106 N.C. App. 324, 328–29, 416 S.E.2d 924, 928 (1992). If proceeding on a negligence theory, a plaintiff must prove that: "(1) the

13

product was defective at the time it left the control of the defendant, (2) the defect was the result of defendant's negligence, and (3) the defect proximately caused plaintiff damage." MagneTek, 138 N.C. App. at 75, 530 S.E.2d at 326 (footnote omitted); see Farrar & Farrar Farms v. Miller-St. Nazianz, Inc., 477 F. App'x 981, 984 (4th Cir. 2012) (per curiam) (unpublished); Jolley v. General Motors Corp., 55 N.C. App. 383, 385, 285 S.E.2d 301, 303 (1982). More broadly, to show a defendant's negligence, a plaintiff must prove "(1) duty, (2) breach, (3) causation, and (4) damages." Bryant v. Adams, 116 N.C. App. 448, 465, 448 S.E.2d 832, 841 (1994); see Holley v. Burroughs Wellcome Co., 318 N.C. 352, 355, 348 S.E.2d 772, 774 (1986); Morgan v. Cavalier Acquisition Corp., 111 N.C. App. 520, 528, 432 S.E.2d 915, 919 (1993).

To survive a summary judgment motion, a non-movant's evidence concerning cause of an injury "must be fact-specific and not merely speculative." Driggers v. Sofamor, S.N.C., 44 F. Supp. 2d 760, 765 (M.D.N.C. 1998); Ross v. Washington Mut. Bank, 566 F. Supp. 2d 468, 479 (E.D.N.C. 2008), aff'd, 625 F.3d 808 (4th Cir. 2010). If an injury might have multiple causes, the plaintiff "must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. A mere possibility of such causation is not enough . . . ." Driggers, 44 F. Supp. 2d at 765 (quotation omitted & emphasis added); see Ross, 566 F. Supp. 2d at 479. Furthermore, when a plaintiff seeks to demonstrate causation for medical injuries, "[w]here the exact nature and probable genesis of . . . [the] injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury." Driggers, 44 F. Supp. 2d at 765 (quotation omitted); see Holley v. ACTS, Inc., 357 N.C. 228, 232, 581 S.E.2d 750, 753 (2003).

Cahoon's proximate cause argument hinges exclusively on the testimony of Dr. Cohen, Dr.

14

Staggs, and Dr. Spear. See [D.E. 63] 14. Without these witnesses, Cahoon cannot meet her burden of demonstrating causation. Accordingly, the court grants summary judgment to the Foundation on Cahoon's product liability negligence claim.

B.

As for Cahoon's breach of implied warranty claims, under North Carolina law, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.C. Gen. Stat. § 25-2-314(1). To prove a breach of warranty, a party must prove "(1) that the goods in question were subject to an implied warranty of merchantability; (2) that the goods were defective at the time of the sale and as such did not comply with the warranty; (3) that the resulting injury was due to the defective nature of the goods; and (4) that damages were suffered." Williams v. O'Charley's, Inc., 221 N.C. App. 390, 393, 728 S.E.2d 19, 21 (2012); see Goodman v. Wenco Foods, Inc., 333 N.C. 1, 10, 423 S.E.2d 444, 447–48 (1992) Cockerham v. Ward, 44 N.C. App. 615, 624–25, 262 S.E.2d 651, 658 (1980). As discussed, "[i]n cases involving complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury." ACTS, Inc., 357 N.C. at 232, 581 S.E.2d at 753 (quotation omitted); see Ross, 566 F. Supp. 2d at 479; Driggers, 44 F. Supp. 2d at 765; Williams, 221 N.C. App. at 396, 728 S.E.2d at 23.

Cahoon cannot rely on the excluded expert reports of Dr. Cohen, Dr. Staggs, and Dr. Spear in order to prove causation. Cf. [D.E. 63] 17. Accordingly, the court grants summary judgment to the Foundation on Cahoon's breach of implied warranty claims.

C.

As for Cahoon's failure to warn claims, a seller has a duty to warn when either:

(1) At the time the product left the control of the manufacturer or seller, the product,

15

without an adequate warning or instruction, created an unreasonably dangerous condition that the manufacturer or seller knew, or in the exercise of ordinary care should have known, posed a substantial risk of harm to a reasonably foreseeable claimant.

[or]

(2) After the product left the control of the manufacturer or seller, the manufacturer or seller became aware of or in the exercise of ordinary care should have known that the product posed a substantial risk of harm to a reasonably foreseeable user or consumer and failed to take reasonable steps to give adequate warning or instruction or to take other reasonable action under the circumstances.

N.C. Gen. Stat. § 99B-5(a)(1)–(2); see Bryant, 116 N.C. App. at 465, 448 S.E.2d at 841. A seller must warn only if it had "actual or constructive knowledge" of the particular abesteosis risk of the vermiculite. Crews v. W.A. Brown & Sons, Inc., 106 N.C. App. 324, 330, 416 S.E.2d 924, 928 (1992) (quotation omitted); see Sparks v. Oxy-Health, LLC, 134 F. Supp. 3d 961, 994–95 (E.D.N.C. 2015).

Cahoon primarily argues that the Foundation's vermiculite posed a health risk because the Foundation was aware of the general hazards of asbestos dust and failed to include a packaging warning. Specifically, Cahoon asserts that the Foundation would have learned of the potential health risk of vermiculite through industry literature, that Libby, Montana vermiculite contained tremolite from W.R. Grace's MSDS and industry literature, that OSHA regulations dictated handling of asbestos in the workplace, and that the Foundation's suppliers told the Foundation that its products contained asbestos. See [D.E. 63] 17–19.

Even viewing this evidence in the light most favorable to Cahoon, no rational jury could find that the Foundation knew the particular connection between tremolite asbestos in vermiculite products and mesothelioma. See Sparks, 134 F. Supp. 3d at 994–95. It is not sufficient, as Cahoon asserts, that the Foundation knew of generalized "hazards" relating to the Libby, Montana

vermiculite. See id. Rather, Cahoon must demonstrate that the Foundation knew that its vermiculite was tied to a specific health risk of mesothelioma. See id. Cahoon's evidence fails to make this connection. See id. Accordingly, the court grants summary judgment to the Foundation on Cahoon's failure to warn claim.

D.

As for Cahoon's punitive damages claims, N.C. Gen. Stat. § 1D-1 through 1D-50 governs the claims. See N.C. Gen. Stat. § 1D-10. Under North Carolina law, a party can recover punitive damages "only if the claimant proves that the defendant is liable for compensatory damages" and that at least one statutory aggravating factor was present and "was related to the injury for which compensatory damages were award." Id. § 1D-15(a). Because Cahoon cannot recover compensatory damages in this case, she cannot recover punitive damages. See, e.g., BDM Invs. v. Lenhil, Inc., 826 S.E.2d 746, 763 (N.C. Ct. App. 2019); Funderburk v. JPMorgan Chase Bank, N.A., 241 N.C. App. 415, 425, 775 S.E.2d 1, 8 (2015); Pittmann v. Hyatt Coin & Gun, Inc., 224 N.C. App. 326, 330, 735 S.E.2d 856, 859 (2012). Thus, the court grants summary judgment to the Foundation on Cahoon's request for punitive damages.

IV.

In sum, the court GRANTS defendant's motion for summary judgment [D.E. 59], DENIES plaintiff's motion for extension of time to file expert reports [D.E. 62], and strikes the reports of Dr. Cohen, Dr. Staggs, and Dr. Spear [D.E. 63]. Defendant may file a motion for costs in accordance with the Federal Rules of Civil Procedure and this court's local rules. The clerk shall close the case.

17

SO ORDERED. This 24 day of February 2020.

                                                              JAMES C. DEVER III  
                                                              United States District Judge